Minute Order Form (02/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7375 | **DATE** | 7/27/2000 |
| **CASE TITLE** | Verser vs. Elyea, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 8/11/00 at 10:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying defendants' motion to dismiss counts as to themselves(29-1). Ruling set for 7/31/00 is vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUL 2 8 2000 | |
| | Notified counsel by telephone. | date docketed | 59 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 7/27/2000 | |
| MPJ | courtroom deputy's initials | date mailed notice | |
| | | MPJ | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLENN VERSER,

      Plaintiff,

v.

WILLARD ELYEA, HAZEL LOVETT,
JAMES PAGE, JOSEPH SMITH, DR.
AGUINALDO and DONALD SNYDER,

      Defendants.

No. 99 C 7375

DOCKETED
JUL 28 2000

## MEMORANDUM OPINION AND ORDER

Glenn Verser alleges that he was injured and denied proper medical attention while incarcerated at the Stateville Correctional Center in Illinois. Arguing that his Eighth Amendment rights were violated, he sued Drs. Willard Elyea, Joseph Smith, and Aguinaldo, respectively the current and former medical directors at the prison, and a sick-call physician there, as well as other Stateville employees: Hazel Lovett, a physical therapist, Judy Welsh, grievance officer, James Page, chief administrative officer at Stateville; he also sued Donald Snyder, director of the Illinois Department of Corrections. Elyea, Page, and Snyder move to dismiss Mr. Verser's counts as to themselves. I deny the motion.

I.

Mr. Verser, an inmate at Stateville, injured his right knee playing basketball in March 1998. On March 19, 1999, in extreme pain, he was examined by physical therapist Hazell Lovett, who ordered physical therapy three times a week and taped his knee. On May 25, 1999, he was examined by Dr. J. Duffy, a private orthopedic specialist, who diagnosed Mr. Verser with chondromalatia patallae, recommended physical therapy three times a week for four weeks and a knee brace. Dr. Elyea, formerly medical director at Stateville denied the knee brace as "not indicated for this problem" anyway, but he approved the physical therapy regime. He did not examine Mr. Verser and is not an orthopedic specialist.

To get to physical therapy, Mr. Verser would need "call passes" allowing him to leave his cell, which he received, but his physical therapy sessions began three weeks after they were ordered, and he was only able to attend four sessions. During this period, when he asked Lovett why he was not receiving call passes, she told him that she did not feel like sending them, commenting something to the effect of, "the State owes you [inmates] nothing." She said she disliked inmates because an inmate at Joliet prison killed her brother. On July 13, 1999, Mr. Verser was examined again by Dr. Duffy, who, on learning that he had not completed the

physical therapy course, prescribed four more weeks and an ace bandage. Dr. Elyea contravened these recommendations, again without examination, ordering that formal physical therapy be discontinued and that Mr. Verser should engage in unsupervised exercises in his cell. On August 19, 1999, Mr. Verser fell down a flight of stairs and injured his back. He attributes the fall to his weak knee.

On July 27, 1999, Mr. Verser filed a medical treatment grievance requesting the course of treatment recommended by Dr. Duffy. It was denied by Judy Welsh, a grievance officer at Stateville, on August 20 because she had "no medical expertise or authority to contradict Dr. Elyea's decision." Mr. James Page, chief administrative officer of the prison, concurred in writing on August 27. Mr. Verser appealed, but his appeal was denied on January 14, 2000. Donald Snyder, head of the state prison system, concurred in this result.

Mr. Verser sought medical treatment for his knee problems from Dr. Aguinaldo on January 4, 2000, but Dr. Aguinaldo prescribed no treatment, saying that he would consult with Dr. Smith. On January 27, Mr. Verser returned again to sick call, where Dr. Aguinaldo told him to leave. Mr. Verser wrote about his situation to Dr. Smith, the new medical director at Stateville, but Dr. Smith wrote back on February 4 that he had received physical therapy which was

-3-

discontinued because "the physician in consultation with Orthopedic and Physical Therapy Services [felt] that further therapy would not be beneficial."

Mr. Verser was relocated from the third to the fifth floor of his cell house on January 22, 2000, and given an upper-bunk assignment. He requested a lower bunk and a low gallery permit that would enable him to remain on the first floor and avoid repetitive climbing. Dr. Elyea refused these requests. Mr. Verser believes that this is retaliation for his behavior in connection with his attempt to obtain medical treatment. This lawsuit followed.

II.

A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief. *Vickery v. Jones*, 100 F.3d 1334, 1341 (7th Cir. 1996). When analyzing the dismissal of a complaint under Fed. R. Civ. P. 12(b)(6), I accept the factual allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998).

A.

To succeed in an Eighth Amendment cruel and unusual punishment

claim, the prisoner must show that there were "'acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs,'" *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Contrary to the defendants' suggestions, Mr. Verser's problems were serious medical needs under our current standards since they were diagnosed by two physicians and a physical therapist as needing treatment.

Deliberate indifference amounts to criminal recklessness--the defendant must have known that the plaintiff "was at serious risk of being harmed, and decided not to do anything to prevent that harm from occurring even though he could easily have done so." *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998) (*citing Farmer v. Brennan*, 511 U.S. 825, 836-837 (1994)). However, contrary to the defendants' response, a plaintiff need not use magic words like "reckless" or "intentional" to make out a case for deliberate indifference. He must merely plead that the defendant behaved in a

way that can be construed to show reckless or intentional conduct, and Mr. Verser does this.

The defendants argue that Dr. Elyea's conduct fails to amount to criminal recklessness because it involved mere disagreement with a physician's recommended treatment.[1] I agree that there is no general rule that an inmate is entitled to the care recommended by his private physician rather than the prison doctor, see *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (A prisoner does not have a constitutional right to choose his treatment, and a court will not second-guess matters of professional judgment.), but that is because there are no bright line rules in this area. As the Seventh Circuit has said, "it is difficult to generalize, except to observe that the civilized minimum is a function both of objective need and of cost. The lower the cost, the less need has to be shown, but the need must still be shown to be substantial." *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). There, the court found that "refus[al] to treat, at trivial cost, the pain caused by cancer and cancer treatments border[ed] on the barbarous. . . . It is not as if [the plaintiff] were demanding esoteric,

---

[1] The defendants cite to *Estelle*, 429 U.S. 105-06, which, however, does not support that proposition, but rather that negligence is not deliberate indifference.

-6-

experimental, or expensive interventions[;] . . . . he just wanted the pain medicine that the prison doctor had prescribed for him. The . . . deliberate refusal of it was a gratuitous cruelty." *Id.*

In this case the plaintiff had a knee injury, not cancer, but the Seventh Circuit noted that the illness in question need not be "life threatening," as indeed it was not even in *Ralston*. *See id.* Moreover, a knee injury is serious, and, as in *Ralston*, the cost of the treatment recommended by Mr. Verser's private doctor--some physical therapy sessions and a knee brace or ace bandage--was trivial. Moreover, Dr. Elyea declined to follow the recommendations of an orthopedic specialist, which he is not, without even examining the patient, despite repeated complaints of pain and injury. He did not even take steps to ensure that Mr. Verser was able to complete the program of treatment that he himself approved.

Although in this context "barbarous" and "gratuitous" may be a little strong, "cruel" and "unusual" are not. I conclude that, balancing the seriousness of the injury with the cost of treatment, Dr. Elyea's alleged conduct rose to the level of deliberate indifference. *Accord Graham v. Buchanan*, No. 99 C 0687, 1999 WL 967560 (N.D. Ill. Oct. 7, 1999) (holding in a similar case that, if Dr. Elyea failed to carry out the recommendations of a specialist,

-7-

that could support an inference of deliberate indifference.) (Kennelly, J.). "[M]edical neglect is not a lawful form of punishment, and pain itself can be a serious medical need to which prison medical personnel must respond." *Id.* at \*3 (*citing Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996)).

B.

The defendants argue that James Page, chief administrative officer at the prison, and Donald Snyder, head of state prison system, cannot be held liable under § 1983 because they were not "personally responsible for a deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Supervisors who were merely negligent in failing to detect and prevent subordinates' misconduct are not liable. *See Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). An official "cannot be personally liable under a theory of respondeat superior." *Gentry*, 993 65 F.3d at 561. However, he can be held liable "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Id.* (internal citations omitted). That is, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* In short, some causal connection or affirmative link between the action

complained about and the official sued is necessary. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

The defendants say that all that Messrs. Page or Snyder did was to concur with the denial of Mr. Verser's grievance appeal, and that is not enough. However, the Seventh Circuit has disagreed. "If the [state prison director] denied an appeal submitted by [an inmate plaintiff], this would be sufficient to establish personal involvement" for § 1983 purposes. *Pride v. Peters*, No. 94-2025, 1995 WL 746190, at *1 (7th Cir. Dec. 15. 1995)(unpublished order). In a published case, the Seventh Circuit held that the Director of the state prisons had enough personal involvement because he "approved an unjustified disciplinary ticket issued by [subordinates]," *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994) The Director of the Department of Corrections was "presumed to have knowledge of . . . the unlawful practices at [the prison]." *Id.* (citing *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)).

The defendants provide some case law from the Fourth and Eight circuits and from the Northern and Central Districts of Illinois, but, needlessly to say, Seventh Circuit law governs here. The one Seventh Circuit case to which the defendants direct me, *Crowder v. Lash*, 687 F.2d 996, 1005-06 (7th Cir. 1982), holds that merely

being informed by letter of unconstitutional conduct is insufficient for personal responsibility. It does not go to whether personally denying or concurring in the denial of a grievance or appeal is personal responsibility. Therefore, I find that Page and Snyder were personally responsible.

Page and Snyder claim they are entitled to qualified immunity. Qualified immunity should be granted when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The contours of the right must be sufficiently clear that a reasonable official would understand that his action violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Page and Snyder say that it would not have been reasonable for them to know that in countersigning the denial of the grievance and appeal forms, which signature was "required by regulation," they would subject Mr. Verser to cruel and unusual punishment.

This won't do. The United States Constitution takes precedence over regulations, as any reasonable official would know. Moreover,

no one who examined the record could reasonably if erroneously conclude that Mr. Verser could be denied the cheap and ordinary medical treatment (physical therapy and a knee brace or ace bandage!), prescribed by treating specialist, pursuant to the unexplained directions of a nonspecialist who never examined him, and that he would not even be allowed to complete the medical treatment that that physician directed. Snyder and Page were obligated by the Constitution as well as by Illinois law to evaluate the grievance and the appeal, not merely to sign it. They are not entitled to qualified immunity.

I therefore DENY the defendant's motion to dismiss Mr. Verser's § 1983 claims against Dr. Elyea (count I), James Page (Count III), and Donald Snyder (Count VII). Without casting any aspersions on the state's representation, I commend Mr. Verser's able counsel for unusually good briefing and argument.

ENTER ORDER:

*Elaine L Bucklo*

Elaine E. Bucklo
United States District Judge

Dated: July 27, 2000

Copies have been mailed to:

Wendi E. Sloan
Barack Ferrazzano Kirschbaum
 Perlman & Nagelberg
333 W. Wacker Drive, #2700
Chicago, IL 60606

Attorney for Plaintiff

Ronald Stearney, Jr.
Assistant Attorney General
100 W. Randolph Street, 13th Fl.
Chicago, IL 60601

Attorney for Defendants